**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING DIVISION**

**RUSSELL FOUT,**

    **Plaintiff,**

**v.**                                                        **Civil Action No.: 5:10-cv-132**
                                                                  **JUDGE STAMP**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

**REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [14], DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [13], AND AFFIRM THE DECISION OF THE ADMINISTRATIVE LAW JUDGE**
___

## I.    INTRODUCTION

On December 9, 2010, Plaintiff Russell Fout ("Plaintiff"), proceeding *pro se*, filed a Complaint in this Court to obtain judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner" or "Defendant"), pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). (Complaint, ECF No. 1.) On July 18, 2011, the Commissioner, by counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed an answer and the administrative record of the proceedings. (Answer, ECF No. 8; Administrative Record, ECF No. 9.) On August 24, 2011, and September 22, 2011, Plaintiff and the Commissioner filed their respective Motions for Summary Judgment. (Pl.'s Mot. for Summ, J. ("Pl.'s Mot."), ECF No. 13; Def.'s Mot. for Summ. J ("Def.'s Mot"),, ECF No. 14.) Following review of the motions by the parties and the transcript of the administrative proceedings, the undersigned Magistrate Judge now issues this Report and Recommendation to the District Judge.

## II. BACKGROUND

**A.**   *Procedural History*

Plaintiff was granted Disability Insurance Benefits ("DIB") after filing an application with the Social Security Administration ("Administration") in June 1990. (R. at 233, 368.) On September 19, 2005, the Administration mailed Plaintiff a Notice of Revised Decision informing him that his disability had ended and that he had been overpaid for the following periods: January 1997 through April 1997, January 1998 through April 1998, and January 1999 and continuing. (R. at 50-52.) Plaintiff disputed the Administration's decision and requested a hearing before a United States Administrative Law Judge ("ALJ"). (R. at 60-61.)

Plaintiff's hearing was held on November 8, 2006 in Cumberland, Maryland. (R. at 231.) After being informed of his right to retain counsel to represent him before the ALJ, Plaintiff chose to proceed *pro se*. (R. at 238-41.) On December 18, 2006, the ALJ issued a written decision that was unfavorable to Plaintiff in which he determined that Plaintiff had been overpaid DIB, that Plaintiff was at fault in causing the overpayment, and that waiver of recovery of the $66,475.60 that had been overpaid could not be granted. (R. at 15-17.) Plaintiff requested review by the Appeals Council. (R. at 10.) On May 8, 2007, the Appeals Council denied Plaintiff's request for review. (R. at 6-8.)

On August 10, 2007, Plaintiff filed a civil action seeking review of the ALJ's decision in the Clarksburg Division of the United States District Court for the Northern District of West Virginia. (*See* Case No. 1:07-cv-108, ECF No. 1.) The Honorable Irene Keeley, United States District Judge, referred Plaintiff's action to The Honorable John S. Kaull, United States Magistrate Judge, for a Report and Recommendation ("R&R").

On December 16, 2008, Magistrate Judge Kaull issued his R&R recommending that Judge Keeley deny the Commissioner's Motion for Summary Judgment, reverse the decision of the Commissioner, and remand the matter to the Commissioner for a new hearing. (R. at 293-306.) In his R&R, Magistrate Judge Kaull determined that the ALJ did not consider Plaintiff's assertions that he was without fault in causing the overpayment and did not explain why Plaintiff's *pro se* defense was inapplicable to a finding of fault. (R. at 301-02.) Furthermore, Magistrate Judge Kaull determined that the Court could not determine the meaning of the ALJ's determination of Plaintiff's credibility from the ALJ's written decision. (R. at 305.) By an Order dated January 2, 2009, Judge Keeley adopted Magistrate Judge Kaull's R&R. (R. at 289-91.)

In 2009, Plaintiff filed a Request for Waiver of Overpayment Recovery or Change in Repayment Rate with the Administration. (R. at 356-63.) Plaintiff's second hearing before an ALJ was held on May 4, 2010 in Winchester, Virginia. (R. at 364.) On July 30, 2010, in a written opinion that was unfavorable to Plaintiff, the ALJ determined that Plaintiff had been overpaid in the amount of $66,475.60 from April 1, 1997 to December 1, 2005; that he was not without fault in causing the overpayment; and that recovery of the overpayment should not be waived. (R. at 284-88.) Plaintiff now requests judicial review of the ALJ's decision.

**B.**     ***Personal and Testimonial History***

Plaintiff was rendered quadriplegic as a result of a diving accident. (R. at 234.) Plaintiff earned a four-year degree in accounting after the accident. (R. at 254.) After graduating from college with his degree in accounting, Plaintiff spent two years working for First Federal Savings Bank in Cumberland, Maryland. (R. at 255.) He worked for a disability group for three months and a stainless company for two months. (R. at 255-56.) Plaintiff then collected unemployment for

about a year. (R. at 256.)

In 1991, Plaintiff became self-employed as an accountant. (R. at 368.) Up until at least 2005, Plaintiff ran his business as a sole proprietorship. (R. at 81, 95, 110, 121, 135, 149, 162.) Because of his self-employment, the Administration granted Plaintiff a trial work period to determine his ability to work. (R. at 369.) This trial work period ended in January of 1996, and the Administration determined that Plaintiff had the ability to work as of this time. (R. at 50, 369.) However, under the Administration's policy, January, February, March, and April of 1996 were excluded from Plaintiff's refund calculations. (R. at 252.) Plaintiff then began a thirty-six-month period of eligibility in February of 1996 and continued to receive DIB during this period even though he never stopped working because of his condition. (R. at 252, 258.) At the 2006 hearing, Plaintiff demonstrated that he understood the Administration's trial work policy as explained to him but that his prior understanding had been "fuzzy." (R. at 249-50, 257.) However, when informed by the ALJ that only gross earnings were considered, Plaintiff contended that he thought "net as well, was considered." (R. at 258; *see also* R. at 265.) At the 2010 hearing, Plaintiff again demonstrated that he understood the Administration's policy by stating that he understood that he was required to submit a copy of his tax return each year and that his eligibility for DIB would end if he made over a certain amount. (R. at 371-72.)

In February of 2004, Plaintiff completed a Work Activity Report (Self-Employed Person) for the Administration. (*See* R. at 75-78.) On his report, Plaintiff listed himself as the sole owner of Fout's Accounting Service and stated that he earned more than $200.00 or worked more than 40 hours in the months of January, February, March, and April. (R. at 75.) The report also asked Plaintiff for his monthly self-employment income; this was to be reported in terms of both gross and

net income. (*Id.*) Plaintiff noted that he had attendant care and secretarial expenses that were necessary for him to work. (R. at 76.) According to Plaintiff, he needed two assistants to help him get dressed, exercise, answer phones, and maintain his filing system; these assistants worked for six hours per day for $8.00 per hour. (*Id.*) Two months later, Plaintiff received a Notice of Change in Benefits from the Administration. (R. at 207.) This letter informed Plaintiff that he would receive one payment of $2,956.00 in May 2004 and then monthly payments of $938.00. (*Id.*) At the 2006 hearing, Plaintiff testified that he continued to accept these DBI payments. (R. at 244-46.) Plaintiff received notice in 2005 regarding the overpayment and does not currently receive DBI benefits. (R. at 369-70.)

In June 2005, Plaintiff received a Notice of Proposed Decision from the Administration informing him that he may not be entitled to DIB payments for April 1997 and after. (R. at 26.) That same month, Plaintiff sent the Administration a Request for Reconsideration stating that he sends "a copy of his tax return each year" and that "all of the sudden, I am told that I was not eligible clear back to 1997." (R. at 32.) On June 28, 2005, the Administration answered Plaintiff's request with a letter asking for a spreadsheet of the number of hours he spent in his business for each month from January 1997 to June 2005. (R. at 33.) The letter also stated: "It would also be beneficial and would expedite your case if you would include your Net Earnings from Self-Employment for each month in the specified period along with the hourly breakdown." (*Id.*) Plaintiff responded with a spreadsheet he created showing hours worked and net income. (R. at 35.) The Administration compiled its own spreadsheet and determined he was not eligible for DBI. (R. at 37-59.)

At the 2006 hearing, Plaintiff testified regarding his living expenses. He stated that the current amounts he was making "should cover existing expenses." (R. at 266.) He further noted that

the DBI he received from Social Security was used to cover daily living expenses, but when asked by the ALJ, also admitted that he was able to cover those expenses with the income from his business (R. at 267.) Three years later, in 2009, Plaintiff's completed Request for Waiver of Overpayment Recovery noted monthly household expenses totaling approximately $4,000. (R. at 361.) This form also inquired as to Plaintiff's monthly gross and net income. (R. at 360.)

At the 2010 hearing, Plaintiff testified that his accounting service is now an S-Corporation and that the corporation's net earnings increase by about $10,000 per year. (R. at 380.) Plaintiff pays himself an annual salary of $10,000 from these earnings. (R. at 371, 380.) He also noted that he is the sole member of the S-Corporation and that the corporation's money is accessible to him for everyday expenses. (R. at 381.) Plaintiff's S-Corporation is located in an office outside of his home. (R. at 375.) Plaintiff's business employs at least one secretary; he noted that during the past year he had six employed by the corporation. (R. at 384.) Finally, Plaintiff's wife is a "paid salary employee" of the S-Corporation. (R. at 393.)

Plaintiff also provided testimony about his medical expenses at the 2010 hearing. Plaintiff noted that he had his wheelchair, a lift for the van that transported him to work, and a ramp attached to his home. (R. at 374.) He also testified that the batteries for his wheelchair, which cost approximately $200.00, must be replaced each year. (R. at 377.) Furthermore, the lift for the van must be replaced once every two years at an expense of approximately $250.00. (*Id.*) Plaintiff also testified that his personal care assistants receive $18.00 in the morning and $17.00 in the evening for a total of $35 per day. (R. at 375-76.) He noted that he expends $210 per week in personal care expenses because he goes to work six days a week. (R. at 376-77.) According to the Schedule Cs for Plaintiff's income tax returns for 1996 and 1998-2005, he did not include secretarial "labor"

costs as business expenses.[1] (R. at 79-171, 179-93, 209-27.) However, at the hearing, Plaintiff testified that in 2002, he received a phone call from a representative informing him that his income was over the threshold and asking if he had any necessary medical or work expenses that would offset this amount. (R. at 372-74.)

After the 2010 hearing, Plaintiff provided the ALJ with copies of his personal and S-Corporation tax returns for the 2009 tax year. (R. at 324-54.) The federal tax return for Plaintiff's corporation shows gross income of $139,779 and net business income of $59,092. (R. at 324.) Plaintiff's individual federal tax return shows total income of $74,440. (R. at 335.) Specifically, Plaintiff's federal tax return depicts a salary of $15,000 and $59,534 received from the S-Corporation. (*Id.*)

### III. CONTENTIONS OF THE PARTIES

Plaintiff, in his motion for summary judgment, alleges that he was erroneously informed by an ALJ that his "eligibility was determined based on my gross income, not my net." (Pl.'s Mot.) He also states that he complied with the Administration's rules by submitting copies of his tax returns each year and that the Administration informed him that he was still eligible for benefits. (*Id.*) Accordingly, Plaintiff contends that his liability for the overpayment of $66,000.00 should be reduced to zero.[2] (*Id.*)

Defendant asserts that the decision of the ALJ is supported by substantial evidence and should be affirmed as a matter of law. (Def.'s Mot. at 1.) Specifically, the Commissioner asserts

---

[1] A copy of Plaintiff's 1997 tax return is not included in the Administrative Record.

[2] In his Motion for Summary Judgment, Plaintiff misstates the amount of the overpayment found by the ALJ. In his decision, the ALJ determined that Plaintiff is liable for repayment of $66,475.60 for the period from April 1, 1997 to December 1, 2005. (R. at 288.)

that the ALJ properly determined that Plaintiff "was not without fault in causing the overpayment and was not entitled to waiver of recovery of the overpayment." (Def.'s Br. in Supp. of Mot. for Summ. J. ("Def.'s Br.") at 5, ECF No. 15.)

## IV. STANDARD OF REVIEW

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") applies the following standards in reviewing the decision of an ALJ in a Social Security disability case:

> Judicial review of a final decision regarding disability benefits . . . is limited to determining whether the findings . . . are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g) ( "The findings . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The phrase "supported by substantial evidence" means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. at 401, 91 S. Ct. at 1427 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216 (1938)) . . . . If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment . . . if the decision is supported by substantial evidence. *See Laws v. Celebrezze*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 529 (4th Cir. 1962).

*Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Fourth Circuit has defined substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. *Laws,* 368 F.2d at 642.

Because review is limited to whether there is substantial evidence to support the ALJ's conclusion, "[t]his Court does not find facts or try the case *de novo* when reviewing disability determinations." *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Furthermore, **"the language of § 205(g) . . . requires that the court uphold the decision even should the court**

disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (emphasis added).

## V. DISCUSSION

**A.** *Discussion of the Administrative Law Judge's Decision*

After reviewing the entire record, the ALJ who presided over the hearing held in 2010 made the following findings:

1. **The claimant was overpaid benefits in the amount of $66,475.60 during th period April 1, 1997 to December 1, 2005 (20 CFR 404.504.)**

2. **The claimant was not without fault in causing the overpayment (20 CFR 404.506(a), 404.507, and 404.410a).**

3. **Recovery of the overpayment is not waived, and the claimant is liable for repayment of $66,475.60 during the period April 1, 1997 to December 1, 2005 (20 CFR 404.506).**

(R. at 285-88.) The ALJ also noted that Plaintiff's testimony regarding his understanding of the Administration's policy was not entirely credible. (R. at 287.) Specifically, the ALJ noted that Plaintiff has managed to maintain a successful corporation, that he prepares complicated tax documents for clients, and that he was able to submit an appeal to the United States District Court for the Northern District of West Virginia without attorney assistance. (*Id.*) Overall, the ALJ determined that Plaintiff continued "to receive and use benefit checks that he knew or should reasonably been expected to know he was not entitled to due to his earnings." (R. at 288.)

*B.* *Analysis of the Administrative Law Judge's Decision*

Under the Social Security Act ("Act"), Congress requires the Commissioner to recover overpayments from beneficiaries of Social Security who are not without fault in causing the overpayment. *See* 42 U.S.C. § 404(a), (b) (2006). However, the Act provides for the Commissioner

to waive overpayments "to . . . any person who is without fault if such adjustment or recovery would defeat the purpose of this title or would be against equity and good conscience." 42 U.S.C. § 404(b). If the Court determines that Plaintiff was at fault in causing the overpayments, the Court need not reach a decision regarding the second prong of the analysis. *See Garnett v. Sullivan*, 905 F.2d 778, 782 (4th Cir. 1990).

### 1. Standards for Determining Fault

"Fault" is defined as follows in the regulations interpreting the Act"

> *Fault* as used in *without fault* . . . applies only to the individual. Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual . . . from liability for repayment if such individual is not without fault. . . . What constitutes fault . . . depends on whether the facts show that the incorrect payment to the individual . . . resulted from:
>
> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507 (2011). The claimant has the burden of establishing that he was without fault in causing the overpayment. *Anderson v. Sullivan*, 914 F.2d 1121, 1122 (9th Cir. 1990) (citations omitted); *Viehman v. Schweiker*, 679 F.2d 223, 227 (11th Cir. 1982) (citing *Kendrick v. Califano*, 460 F. Supp. 561 (E.D. Va. 1978)). When determining whether an individual is without fault, "the . . . Administration will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations . . . the individual has." 20 C.F.R. § 404.507.

### 2. Substantial Evidence Supports the ALJ's Decision That Plaintiff Was Not

**Without Fault In Causing the Overpayments**

As his assignment of error, Plaintiff asserts that his liability for the overpayment should be reduced to zero. (Pl.'s Mot.) Plaintiff asserts that he has complied with all of the Administration's rules by submitting copies of his tax returns and by completing the questionnaire for 2004. (*Id.*) Furthermore, Plaintiff alleges that he was erroneously informed "by a Social Security judge that [his] eligibility was determined based on [his] gross income, not net." (*Id.* (alterations in original).) At issue is whether the ALJ properly determined that Plaintiff was at fault according to the third type of fault because he accepted payments that he knew or could have been expected to know were incorrect. *See* 20 C.F.R. § 404.507.

Here, there is substantial evidence to support the ALJ's finding that Plaintiff was at fault in causing the overpayment. At the hearing held in 2006, Plaintiff testified that after he became disabled, he entered college in 1982 and graduated in 1986 with a four-year degree in accounting. (R. at 254-55.) After college, Plaintiff worked for First Federal Savings Bank in Cumberland, Maryland, a disability group, and then a stainless company. (R. at 255-56.) In 1991, Plaintiff utilized his college degree and became self-employed as an accountant. (R. at 256.) Plaintiff's accounting business was first organized under Schedule C (R. at 272) and is now an S-Corporation (R. at 380.) At the 2010 hearing, Plaintiff testified that the S-Corporation's net earnings for 2009 were approximately $56,000, that earnings have increased at about $10,000 a year, and that he pays himself a salary of $10,000 from the corporation's earnings. (R. at 380.) All of this evidence supports the ALJ's finding that Plaintiff knew or should have been expected to know that he was accepting incorrect payments.

Furthermore, Plaintiff's argument that he is without fault because he submitted his tax

returns and questionnaire is without merit. The regulations interpreting fault state that "[a]lthough the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual or any other individual from whom the Administration seeks to recover the overpayment from liability for repayment if such individual is not without fault." 20 C.F.R. § 404.507. As discussed above, Plaintiff is a highly intelligent person who started his own accounting company in 1991. (R. at 254, 256.) At the 2006 hearing, Plaintiff testified that in 2004, his business's gross income was approximately $74,000 and net income was approximately $14,000. (R. at 263.) Plaintiff's testimony in 2010 further supports the ALJ's finding that his company is highly successful. (*See* R. at 380.) Given the fact that Plaintiff's business requires him assist clients with complex accounting matters and provide detailed tax information to the Internal Revenue Service each year, there is substantial evidence to support the ALJ's finding of fault.

Plaintiff appears to suggest that he is not at fault because he "was informed by a Social Security judge that [his] eligibility was determined based on [his] gross income, not [his] net. This was wrong." (Pl.'s Mot.) The regulations discussing fault provide that an individual who "accepts . . . overpayment because of reliance on erroneous information from an official source within the Social Security Administration . . . will be deemed to be *without fault.* 20 C.F.R. § 404.510a. Even assuming that either ALJ provided erroneous information about what type of income is considered, Plaintiff did not rely on these statements in accepting the overpayments because these statements would have been made **after** the period at issue during which Plaintiff continued to receive DIB.

Plaintiff also seems to suggest that he received erroneous information from an official source in the Administration because he complied with all Administration rules by submitting annual copies of his tax returns and he still continued to receive benefits. (Pl.'s Mot.) However, the ALJ at the

2006 hearing informed Plaintiff that even though the Administration may continue to provide benefits to a claimant, that act does not "relieve [the claimant] from the responsibility of knowing what [he is] receiving [he] may not be entitled to." (R. at 271 (alterations in original).); *see also* 20 C.F.R. § 404.507 (the Administration's fault in making an overpayment does not relieve the claimant's liability for repayment). Furthermore, the letter Plaintiff received from the Administration on June 28, 2005 asking him for a spreadsheet detailing the number of hours he worked each month and his net earnings each month explicitly stated that he would continue to receive monthly benefit check while the Administration worked on the case. (R. at 33.) Finally, at the 2010 hearing, Plaintiff admitted that he received a phone call from an Administration representative in 2002 informing him that his income was above the threshold for DIB and asking if he had any medical expenses that would offset his income. (R. at 372-74.) Therefore, substantial evidence exists to support the ALJ's decision that Plaintiff did not rely on erroneous information from the Administration in continuing to accept his benefit checks.

Having reviewed the record, the undersigned finds that Plaintiff has not met his burden of establishing that he was without fault, *see Anderson*, 914 F.2d at 1122; *Viehman*, 679 F.2d at 227, and substantial evidence exists to support the ALJ's finding that Plaintiff was at fault in causing and accepting the overpayments. Because the Court finds that Plaintiff was at fault, it need not consider whether recovery of the payments "would defeat the purpose of this title or would be against equity and good conscience." 42 U.S.C. § 404(b); *see also Garnett*, 905 F.2d at 782 (a court need not consider the second prong of the analysis if it determines that a plaintiff was at fault in causing the overpayments).

## VI. RECOMMENDATION

Accordingly, I **RECOMMEND** that the Defendant's Motion for Summary Judgment (ECF No. 14) be **GRANTED**, the Plaintiff's Motion for Summary Judgment (ECF No. 13) be **DENIED**, and the decision of the Commissioner be affirmed and this case be **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Plaintiff Russell Fout. Respectfully submitted this **6th** day of **October, 2011.**

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE